UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| CHARLES W.,<br>    *Plaintiff*,<br><br>v.<br><br>KILOLO KIJAKAZI,<br>Commissioner of the Social Security<br>Administration,[1]<br>    *Defendant*. | CASE NO. 3:23-cv-01346 (KAD)<br><br><br><br><br>MARCH 31, 2025 |

**MEMORANDUM OF DECISION**
**RE: PLAINTIFF'S MOTION TO REVERSE (ECF NO. 14) AND COMMISSIONER'S MOTION TO AFFIRM (ECF NO. 15)**

Kari A. Dooley, United States District Judge:

Plaintiff Charles W. ("Plaintiff") brings this administrative appeal pursuant to 42 U.S.C. § 405(g). He appeals the decision of defendant Leland Dudek, Acting Commissioner of the Social Security Administration ("Commissioner"), denying his application for disability insurance benefits pursuant to Title II of the Social Security Act (the "Act"). Plaintiff moves to reverse the Commissioner's decision on the ground that the Commissioner's findings are not supported by substantial evidence in the record. Alternatively, he seeks a remand for further proceedings before the Commissioner, on the ground that he did not receive a full and fair hearing. In response, the Commissioner asserts that the Commissioner's findings are supported by substantial evidence and moves for an order affirming the Commissioner's decision. For the reasons set forth below, the Commissioner's motion to affirm is GRANTED. (ECF No. 15). Plaintiff's motion to reverse or remand is DENIED. (ECF No. 14).

---

[1] Plaintiff commenced this action on October 16, 2024, against Kilolo Kijakazi, former Commissioner of the Social Security Administration. On February 16, 2025, Leland Dudek became Acting Commissioner of the Social Security Administration. Pursuant to Fed. R. Civ. P. 25(d), Acting Commissioner Dudek is automatically substituted for Kilolo Kijakazi as the named defendant. The Clerk of the Court is requested to amend the caption in this case to reflect same.

**Standard of Review**

A person is "disabled" under the Act if that person is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(a); 1382c(a)(3)(A). A physical or mental impairment is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* §§ 423(d)(3); 1382c(a)(3)(D). In addition, a claimant must establish that their physical or mental impairment or impairments are of such severity that they are not only unable to do their previous work but "cannot, considering [their] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy…" *Id.* §§ 423(d)(2)(A); 1382c(a)(3)(B).

Pursuant to regulations promulgated by the Commissioner, a five-step sequential evaluation process is used to determine whether a claimant's condition meets the Act's definition of disability. *See* 20 C.F.R. §§ 404.1520; 416.920. In brief, the five steps are as follows: (1) the Commissioner determines whether the claimant is currently engaged in substantial gainful activity; (2) if not, the Commissioner determines whether the claimant has "a severe medically determinable physical or mental impairment that meets the duration requirement in §[§] 404.1509; [§ 416.909]" or a combination of impairments that is severe and meets the duration requirements; (3) if such a severe impairment is identified, the Commissioner next determines whether the medical evidence establishes that the claimant's impairment "meets or equals" an impairment listed in Appendix 1 of the regulations;[2] (4) if the claimant does not establish the "meets or equals"

---

[2] Appendix 1 to Subpart P of Part 404 of C.F.R. 20 is the "Listing of Impairments."

requirement, the Commissioner must then determine the claimant's residual functional capacity ("RFC") to perform his past relevant work; and (5) if the claimant is unable to perform his past work, the Commissioner must finally determine whether there is other work in the national economy which the claimant can perform in light of their RFC, education, age, and work experience. *Id.* §§ 404.1509; 404.1520(a)(4)(i)-(v); 416.909; 416.920(a)(4)(i)–(v). The claimant bears the burden of proof with respect to Steps One through Four and the Commissioner bears the burden of proof at Step Five. *See McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014); *Sczepanski v. Saul*, 946 F.3d 152, 158 (2d Cir. 2020).

The fourth sentence of § 405(g) of the Act provides that a "court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner. . . with or without remanding the case for a rehearing." 42 U.S.C. § 405(g). And it is well-settled that a district court will reverse the decision of the Commissioner only when it is based upon legal error or when it is not supported by substantial evidence in the record. *See Beauvoir v. Chater*, 104 F.3d 1432, 1433 (2d Cir. 1997); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . ."). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Talavera v. Astrue,* 697 F.3d 145, 151 (2d Cir. 2012) (internal quotations omitted). The court does not inquire as to whether the record might also support the plaintiff's claims but only whether there is substantial evidence to support the Commissioner's decision. *Bonet ex rel. T.B. v. Colvin,* 523 Fed. Appx. 58, 59 (2d Cir. 2013). Thus, substantial evidence can support the Commissioner's findings even if there is the potential for drawing more than one conclusion from the record. *See Vance v. Berryhill*, 860 F.3d 1114, 1120 (8th Cir. 2017). The court can only reject the

3

Commissioner's findings of facts "if a reasonable factfinder would have to conclude otherwise." *Brault v. Social Sec. Admin.*, 683 F.3d 443, 448 (2d Cir. 2012). Stated simply, "if there is substantial evidence to support the [Commissioner's] determination, it must be upheld." *Selian v. Astrue,* 708 F.3d 409, 417 (2d Cir. 2013).

**Facts and Procedural History**

On March 28, 2012, Plaintiff filed an application for disability insurance benefits[3] pursuant to Title II of the Act[4] and supplemental security income[5] pursuant to Title XVI of the Act,[6], alleging a disability onset date of June 25, 2010. (Tr., ECF No. 11, at 469–81). These claims were initially denied on May 18, 2012, (Tr., 226–37), and denied upon reconsideration on March 1, 2013. (Tr. at 258–59, 278–79). Plaintiff's first hearing before an Administrative Law Judge ("ALJ") was held on April 9, 2014, and the ALJ issued a written decision ("ALJ Decision I") on April 9, 2015, finding that although Plaintiff was "under a disability," "a substance disorder [was] a contributing factor material to the determination," and Plaintiff was accordingly not disabled under the Act from the onset date to the date of the opinion. (Tr. at 283–84). Plaintiff requested review of the ALJ's decision on April 23, 2015, and the Appeals Council returned his case for further action on November 15, 2016. (Tr. at 344–345). Plaintiff appeared at two subsequent hearings, on September 26, 2017, and January 30, 2018 (Tr. at 2258). On March 22, 2018, an ALJ issued a decision ("ALJ Decision II") again concluding that although Plaintiff was under a disability, his substance use was a contributing factor, and therefore he was not disabled under the

---

[3] The regulations for disability and disability insurance are found at 20 C.F.R. § 404.900, *et seq.*

[4] 42 U.S.C. § 401 *et seq*. Plaintiff remained insured for disability insurance benefits through December 31, 2015. (Tr. at 12).

[5] The regulations for supplemental security income are found at 20 C.F.R. § 416.1400 *et seq.*

[6] 42 U.S.C. § 1381 *et seq*.

Act from the alleged onset date through the decision date. (Tr. at 2259). Plaintiff again requested review, which was denied by the Appeals Council on November 30, 2018. (Tr. at 2279).

Following that denial, Plaintiff appealed the Commissioner's decision to the district court on January 22, 2019. (Tr. at 2251). By stipulation of the parties, that case, docket number 3:19-cv-00103 (MPS), resulted in a remand for further administrative proceedings on February 24, 2020. (Tr. at 2246). Thereafter, on May 22, 2020, the Appeals Council remanded Plaintiff's case to an ALJ for further proceedings. (Tr. at 2241). Plaintiff appeared at a further hearing, and on November 12, 2020, the ALJ issued a "partially favorable" decision ("ALJ Decision III"), (Tr. at 2194), concluding that Plaintiff "was not under a disability… at any time through… the date last insured," but "became disabled on September 12, 2018," and continued to be disabled through the date of the decision. (Tr. at 2208–09). This conclusion was based on Plaintiff's change in age category to "an individual closely approaching advanced age," which occurred on September 12, 2018. (Tr. at 2207).

On March 9, 2021, Plaintiff, represented by counsel, appealed ALJ Decision III to the district court. *See* Complaint, *Williams v. Saul*, No. 3:21-cv-00310-VLB (D. Conn. Mar. 9, 2021), ECF No. 1. Upon motion of the Commissioner, this second appeal was remanded to the Agency on October 7, 2021. (Tr. at 2730–35). The Appeals Commission vacated the unfavorable portion of ALJ Decision III on August 31, 2022, and again remanded the case to an ALJ (Tr. at 2738). The Appeals Commission directed the ALJ to, 1) "obtain additional evidence concerning [Plaintiff's] physical impairments" to complete the administrative record…"; 2) "further evaluate and determine whether [Plaintiff's] carpal tunnel syndrome is a medically determinable impairment and results in any work-related limitations;" 3) "give further consideration to [Plaintiff's] maximum residual functional capacity…"; 4) "advise [Plaintiff] of his right to representation…;"

5

and 5) "obtain supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on [Plaintiff's] occupational base…" (Tr. at 2739–40).

A further hearing was held before the ALJ on January 31, 2023, at which Plaintiff and an impartial vocational expert, Helene J. Feldman, testified. (Tr. at 2627). Plaintiff was represented by counsel. *Id.* The ALJ considered whether Plaintiff was disabled under Title II and Title XVI of the Act, and whether he met the insured status requirements of Title II. (Tr. at 2629). On April 25, 2023, the ALJ issued a decision denying Plaintiff's applications for benefits, concluding that Plaintiff was not disabled under Title II or Title XVI of the Act (Tr. at 2645).

In his decision, the ALJ followed the five-step sequential evaluation process required by 20 C.F.R. §§ 404.1520. At Step One, he found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of June 25, 2010 (Tr. at 2631). At Step Two, he determined that Plaintiff had a combination of severe impairments, which included: alcoholic liver disease with transient alcoholic encephalopathy, alcoholic neuropathy, alcohol abuse, obesity, status post gunshot wound to the right lower extremity, carpal tunnel syndrome (CTS) bilateral hands, depressive disorder, and anxiety disorder. *Id.* At Step Three, the ALJ concluded that Plaintiff's impairments, including his substance use, medically equaled the criteria listed in the regulations.[7] (Tr. at 2632). However, he also assessed the severity of Plaintiff's impairments without consideration of Plaintiff's substance abuse.[8] In doing so, the ALJ determined that had Plaintiff stopped abusing alcohol between June 25, 2010, and September 12, 2018, his remaining limitations would cause more than a minimal impact in performing basic work activities, but would not have

---

[7] *See* §5.05A 20 C.F.R. Part 404, Subpart P, Appendix 1 (listing qualifying impairments).

[8] If an ALJ has "evidence of [a claimant's] drug addiction or alcoholism," he "must determine whether [the claimant's] drug addiction or alcoholism is a contributing factor material to the determination of disability." 20 C.F.R. § 404.1535. If the addiction is such a contributing factor, the claimant is not disabled. *E.g., Smith v. Comm'r of Soc. Sec. Admin.*, 731 Fed. Appx. 28, 30 (2d Cir. 2018) (summary order) (holding ALJ did not err in conclusion that claimant was not disabled where her substance use was a contributing factor material to the determination that she was disabled).

met or medically equaled an impairment listed in the regulations. (Tr. at 2634).[9] Accordingly, the ALJ found that, without substance abuse, Plaintiff would have had the RFC to perform sedentary work,[10] with some additional limitations. He could handle and finger with the bilateral hands only frequently, he was limited to work involving simple and detailed but not complex instructions and tasks, and was limited to brief and incidental contact with the general public. (Tr. at 2636).

As a result of this RFC determination, the ALJ found at Step Four that Plaintiff was incapable of performing his past relevant work as a machine operator/cleaner operator, because the demands exceeded the limitations set forth in Plaintiff's RFC. (Tr. at 2644). But at Step Five, he concluded that there were a significant number of jobs in the national economy that Plaintiff could have performed based on his age, education, work experience, and RFC, such as a document preparer, addressor, or surveillance systems monitor. *Id*. As such, the ALJ held that Plaintiff would not have been disabled had he ceased abusing alcohol, and that because of this contributing factor, Plaintiff was not disabled within the meaning of the Act from the onset date of June 25, 2010, through September 12, 2018. (Tr. 2645). Plaintiff was therefore not entitled to benefits under Title II of the Act or supplemental security income under title XVI of the Act. (Tr. at 2645).[11] This timely appeal followed.[12]

**Discussion**

---

[9] Plaintiff does not challenge this finding.

[10] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." *See* 20 C.F.R. §§ 404.1567(a) and 416.967(a) (defining "sedentary work").

[11] Though the ALJ found that Plaintiff was not disabled under either Titles II or XVI of the Act (Tr. at 2645), Plaintiff only appeals the Title II determination. *See* Compl., ECF No. 1, at 2; Pl.'s Mem. in Supp., ECF No. 14-1, at 1.

[12] On August 17, 2023, the Appeals Council denied Plaintiff's request for review of the ALJ's decision. (Tr. at 2617).

On appeal, Plaintiff challenges the ALJ's RFC determination[13] and contends that it was not based on substantial evidence because it did not sufficiently account for other "disabling symptoms" that "were not worsened by alcohol use." Pl.'s Mem. in Supp., ECF No. 14-1, at 31. Plaintiff claims that even without alcohol abuse, he would not have been able to perform sedentary work due to his unrelated symptoms, in particular his back and other pain, hand use restrictions, and his mental and social limitations, which would result in "unacceptable levels of absenteeism and time off task." *Id.* at 32–34. The Commissioner argues that the ALJ's RFC determination was supported by substantial evidence. Mot. to Affirm, ECF No. 15, at 1. He contends that, under the substantial evidence standard, Plaintiff must "show that any reasonable factfinder was compelled to assess greater RFC restrictions than the ALJ already accounted for," and that Plaintiff failed to do so. Def.'s Mem. in Supp., ECF No. 15-1, at 4. The Court agrees with the Commissioner.

A claimant's RFC is "the most [the claimant] can still do despite [his or her] limitations." 20 C.F.R. §§ 404.1545; 416.945. In formulating an RFC, an ALJ uses "all of the relevant medical and other evidence." 20 C.F.R. § 404.1545(a)(3); *see also Corbiere v. Berryhill*, 760 F. App'x. 54, 57 (2d Cir. 2019) ("[T]he ALJ must weigh all the evidence to make a[n RFC] finding consistent with the record as a whole."). The ALJ "may resolve disputes between conflicting evidence," *Salerno v. Berryhill*, No. 19-CV-00627 (KHP), 2020 WL 882006, at *10 (S.D.N.Y. Feb. 24, 2020), and though he is "not permitted to substitute his own expertise or view of the medical proof for the treating physician's opinion," he may "choose between properly submitted medical opinions." *Heaman v. Berryhill*, 765 F. App'x 498, 500 (2d Cir. 2019) (internal quotation marks and citation

---

[13] In the introduction to his Memorandum in Support of his Motion to Reverse or Remand, Plaintiff writes that, should the Court not reverse the Commissioner's decision, his claim should still be remanded for a new hearing based on three errors committed by the ALJ. Pl.'s Mem. in Supp. at 2. Specifically, he argues that the ALJ "1) failed to compose an RFC description encompassing Mr. Williams' actual impairments in the context of sobriety; 2) minimized the impact of conditions unaffected by alcohol use; and 3) issued a decision denying benefits that was not supported by substantial evidence." *Id.* These alleged errors are directly related to the ALJ's RFC determination and are addressed herein.

omitted). But it is the plaintiff's burden to provide evidence to establish any work-related limitations. *See Smith v. Berryhill*, 740 F. App'x. 721, 726 (2d Cir. 2018).

*Sedentary Exertional Level*

Plaintiff first argues that the RFC was not supported by substantial evidence, because the ALJ did not adequately consider other limitations, not related to his drinking, that prevented Plaintiff from exerting himself at the sedentary level. Pl.'s Mem. in Supp. at 31–32. The Court disagrees.

The ALJ specifically acknowledged Plaintiff's back injury and back pain. He assessed the physical findings which showed that, despite a "limited tolerance for standing and walking and periods of significant pain in his back and lower extremities," Plaintiff had "full strength and normal gait," and that he "received only conservative treatment." (Tr. at 2640). Thus, the ALJ concluded that Plaintiff's limitations arising from his back pain are "consistent with a limitation to sedentary work." *Id.* Plaintiff characterizes this as a "lay opinion," and cites to the testimony of medical expert Dr. Stephen Kaplan, who reviewed Plaintiff's medical records and testified at Plaintiff's January 30, 2018, hearing. Def.'s Mot. to Reverse at 32; (Tr. at 198–99).

Plaintiff highlights excerpts from Dr. Kaplan's testimony in which he stated that "… when [Plaintiff] stops drinking, this is not unusual, he starts complaining about a chronic pain syndrome…," that during a period of sobriety Plaintiff "experienced 'falling in the sense that he had a breakdown of muscle,'" and ultimately concluded that Plaintiff "would need 'some kind of sit/stand option' and a break every hour lasting 5 minutes.'" Mem. in Supp. at 32 (citing Tr. at 206–207, 213). Plaintiff uses these excerpts to argue that Dr. Kaplan, whose opinion the ALJ assigned "great weight," because he "had the opportunity to review much of the medical evidence

and carefully explained his opinion," assessed that Plaintiff could not perform sedentary work had he not been abusing alcohol. *Id.* (citing Tr. at 2641)

Plaintiff simply offers an alternative assessment of Dr. Kaplan's testimony. Plaintiff's isolated quotations notwithstanding, Dr. Kaplan's testimony taken in its entirety supports the ALJ's determination that Plaintiff could have performed sedentary work when not abusing alcohol. Dr. Kaplan assessed Plaintiff's conditions as equaling an impairment listed in the regulations between March 2012 and October 2016. (Tr. at 206–08). When the ALJ presiding over the January 20, 2018, hearing asked if, after Plaintiff reduced or stopped his drinking in 2016, would he "still have been limited to some level of sedentary work," and "would that have been the same for that entire period, in your opinion, without the alcohol?" Dr. Kaplan responded "yes," and elaborated that Plaintiff "showed that when he did finally apparently stop drinking his physical examination and laboratory tests went to normal." (Tr. at 208). And with respect to Dr Kaplan's testimony regarding Plaintiff's necessary break time, Dr. Kaplan indicated that if provided those breaks to help alleviate his lower back, doing sedentary work "really wouldn't be a problem." (Tr. at 213).

Indeed, other medical experts in the record expressed opinions supporting an even less restrictive RFC than that determined by the ALJ.[14] (*See* Tr. at 229, 231, 254). The ALJ gave these opinions "little weight" because the experts did not examine Plaintiff, did not have access to his medical records after February 2013, their conclusions were not consistent with Dr. Kaplan's or with medical evidence showing Plaintiff's aches, pain, and obesity, and they did not consider Plaintiff's carpal tunnel syndrome. (Tr. at 2641). However, "little weight," "is not the equivalent

---

[14] State agency medical consultant Dr. Carol Honeychurch reviewed Plaintiff's records in 2012 and concluded that his "condition does not result in significant limitations in [his] ability to perform basic work activities." (Tr. at 231 (cited by ALJ at 2641)). Dr. Anita Bennet, conducting a similar review in 2013, concluded that Plaintiff "could occasionally lift 20 pounds, frequently lift 10 pounds, stand and/or talk for six hours in an eight hour workday, sit for about six hours in an eight hour work day, and had no additional exertional limitations noted." Def.'s Mem. in Supp. at 7 (citing Tr. at 254; cited by ALJ at 2641).

10

of no weight at all," *Alicea v. Saul*, No. 3:19-CV-1074 (VLB), 2020 WL 13993369, at *9 (D. Conn. Sept. 17, 2020), and "in many cases, a state agency consultant's opinion properly contributes to the substantial evidence in support of an ALJ's RFC determination." *Farrell v. Astrue*, No. 5:10-CV-284, 2011 WL 6941390, at *6, n.4 (D. Vt. Nov. 23, 2011), *report and recommendation adopted*, No. 5:10-CV-284, 2012 WL 12538 (D. Vt. Jan. 3, 2012) (citing *Santos–Sanchez v. Astrue*, 723 F.Supp.2d 630, 638 (S.D.N.Y.2010)). The Court may therefore consider these opinions in assessing whether the ALJ's RFC determination was supported by substantial evidence.

The ALJ also relied on opinions from Dr. Adrian Klufas, Plaintiff's primary care provider and a treating physician. (Tr. at 2642). These included medical source statements that Dr. Klufas completed in August 2013 (Tr. at 1014), December 2016 (Tr. at 1851), and September 2017 (Tr. at 1967). (Tr. at 2642–43). The ALJ first observed that many of Dr. Klufas's opinions were inconsistent, but depending on which opinion he was offering, at times showed that the claimant could complete sedentary work.[15] The ALJ gave Dr. Klufas's findings that Plaintiff could work at a sedentary level "great weight." *Id.* Though other reports from Dr. Klufas indicated that Plaintiff "is limited to less than the full range of sedentary work," the ALJ gave those opinions little weight. (Tr. at 2643). In so determining, the ALJ noted Dr. Klufas's inconsistencies, his lack of familiarity with Agency rules, and that fact that he did not perform a materiality analysis with respect to Plaintiff's alcohol abuse. *Id.* He noted that "Dr. Klufas may have been basing his extreme limitations on the [Plaintiff's] significant liver symptoms, which are exacerbated and caused by his alcohol abuse." *Id.*

---

[15] *Compare, e.g.*, Dr. Klufas's assessment from August 2013, in which he reported that Plaintiff could, *inter alia*, "continuously lift up to 10 pounds, can occasionally lift 11 to 20 pounds, and can never lift more than that due to generalized weakness secondary to chronic liver disease, cirrhosis, and gait instability in carrying," and "occasionally climb ramps and stairs, can never climb ladders ropes and scaffolds, can frequently balance and stoop, and can occasionally kneel, crouch, and crawl," (Tr. at 2642, 1014–1019), with the regulatory definition of sedentary work, note 6, *supra*.

When determining the amount of weight to give to a medical opinion, an ALJ considers the examining relationship, the treatment relationship, the length of treatment, the nature and extent of treatment, evidence in support of the medical opinion, consistency with the record, specialty in the medical field, and any other relevant factors. *Trepanier v. Comm'r Soc. Sec. Admin.*, No. 3:16-CV-01520 (VLB), 2017 WL 6631553, at *6 (D. Conn. Sept. 8, 2017), *aff'd sub nom. Trepanier v. Comm'r of Soc. Sec. Admin.*, 752 F. App'x 75 (2d Cir. 2018) (citing 20 C.F.R. § 404.1527). And it is "within the province of the ALJ" to credit some, but not all, of a medical opinion based on the record evidence. *Malichek v. Comm'r of Soc. Sec. Admin.*, No. 21-CV-00222 (JMA), 2023 WL 2403629, at *6 (E.D.N.Y. Mar. 8, 2023) (quoting *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002), and finding that the ALJ was "entitled to rely on the portion of [a doctor's] opinion that was consistent with the record."). The ALJ's decision to credit some, but not all, of Dr. Klufas's opinions was appropriate, and supported by substantial evidence.

In addition to opinion evidence, the ALJ also cited additional underlying medical reports in the record to support his conclusion that, despite Plaintiff's reported difficulty standing and walking (*see, e.g.,* Tr. at 2684–85), the physical findings from Plaintiff's medical examinations "generally… show full strength and normal gait," and that Plaintiff had "received only conservative treatment." (Tr. at 2640). In making that observation, the ALJ cited to 2016 records from Bridgeport Hospital where provider notes from July indicated "5/5 strength in upper and lower extremities bilaterally, sensation grossly intact," (Tr. at 1402), and progress notes from 2016 which stated "[n]ormal strength, sensation, and reflexes throughout." (Tr. at 1431). Other medical records relied upon by the ALJ in his opinion contained similar observations throughout the period in question.[16] The Court's review of the record on appeal reveals additional medical records which,

---

[16] *See* Tr. at 786 (May 2012 Bridgeport Hospital notes listing strength in each extremity as "strong"); 794 (same, from June 2012); 951 (December 2012 Bridgeport Hospital record, "Musculoskeletal: Normal ROM, normal strength, no

although not directly cited by the ALJ, support the same conclusion. *See* Tr. at 1794–95 (December 2016 Bridgeport Hospital record, "Strength is 5/5 bilaterally in the upper and lower extremities with normal tone and no drift. No abnormal movements," "Normal gait with good posture and balance"); 3008 (November 2014 Bridgeport Primary Care Neuro record stating same); 3061 (July 2016 Bridgeport hospital record stating same); 3108 (September 2016 Bridgeport hospital record stating "Extremities: Extremities normal, atraumatic, no cyanosis or edema," and "Neurologic: CNII-XII intact. Normal strength, sensation and reflexes throughout"). The ALJ's conclusion that, but for his alcohol abuse, Plaintiff was capable of sedentary-level exertion, was supported by substantial evidence.

*Hand Use Restrictions*

The ALJ's RFC determination limited Plaintiff to only frequent handling and fingering with his bilateral hands. (Tr. at 2636). Plaintiff's second argument is that this hand-use restriction should have been more extensive. Pl.'s Mem. in Supp. at 32. The Commissioner contends that Plaintiff's argument, again "simply reinterprets the relevant evidence to support a different conclusion but does not discredit or dismiss the substantial evidence supporting the ALJ's decision." Def.'s Mem. in Supp. at 32. The Court agrees with the Commissioner.

Plaintiff first notes that he has "long-standing hand use restrictions," including positive left hand Tinel and Phalen's signs, a diagnosis of carpel tunnel syndrome, and difficulty gripping and washing dishes due to hand and arm pain, conditions which he asserts have "no relation to alcohol whatsoever." Pl.'s Mem. in Supp. at 32–33 (citing Tr. at 1028, 1029, 1440). Plaintiff also suffers from additional hand issues as a result of neuropathy and frost bite, which Plaintiff concedes "he

---

tenderness, no swelling and no deformity); 1089 (April 2013 Bridgeport hospital record, "Musculoskeletal: Normal ROM, normal strength, no swelling, no deformity…"); 1220 (April 2014 Bridgeport Hospital record, "motor strength intact all 4 extrem."); 1882 (December 2016 Bridgeport hospital record "[s]trength is 5/5 bilaterally in the upper and lower extremities with normal tone and no drift. No abnormal movements")

13

developed during a period of alcohol abuse." *Id.* However, he contends that even though those issues relate to damage caused by alcohol use in the past, the limitations stemming from that damage "are not impacted by alcohol use." *Id.*

With respect to the ALJ's decision, Plaintiff argues that the ALJ's reliance on Dr. Klufas's opinion that Plaintiff "could frequently handle and finger with the bilateral hands," an opinion on which the ALJ placed "great weight," is misplaced, because it was issued in September, 2017, well after Plaintiff's date last insured. *Id.* (citing tr. at 1968, 2642–43). And though the ALJ noted in his decision that Plaintiff had only received "conservative" treatment for his CTS and had no surgical intervention, Plaintiff contends that this was due to Plaintiff's high likelihood of mortality which "would make elective carpal tunnel surgery a non-starter." *Id.* (citing tr. at 1261, 3045, 2642). However, Plaintiff cites to no evidence in the record linking Plaintiff's mortality expectations to a decision to forego CTS surgery.

In determining Plaintiff's hand use restrictions, the ALJ considered Plaintiff's reported pain and swelling in his wrists, as well as his Tinel's and Phalen's signs and carpal tunnel syndrome. (Tr. at 2640, (citing, *e.g.*, Tr. at 1041–42, 1055, 1064, 1087– 89)[17]). But he also cited instances in the record showing that Plaintiff's wrist strength and range of motion were "normal," (Tr. at 2638, 2640 (citing tr. at 1735)), and further observed that his CTS "has been treated conservatively with splinting." *Id.* (citing tr. at 1089). When testifying at the January 31, 2023, hearing, Plaintiff indicated that he had not received any treatment for CTS beyond a brace, that he has never worn a brace on his right, dominant wrist, and only "sometimes" uses a brace on his left wrist when he feels pain. (Tr. at 2689–90).

---

[17] In his decision, the ALJ cited to the record by exhibit. For consistency, when the Court references an item that the ALJ cited to, it cites to the location in the transcript as a whole, rather than to the exhibit.

14

As noted by Plaintiff, the ALJ gave great weight to Dr. Klufas's opinion that Plaintiff "could frequently handle and finger with the bilateral hands". (Tr. at 2643). Plaintiff avers that Dr. Klufas's opinion upon which the ALJ relied was issued on September 25, 2017. Pl.'s Mem. in Supp. at 33. This is by no means clear from the ALJ decision. And the Court observes that the medical source statement from September 25, 2017, regarding Plaintiff's reaching, handling, and fingering is, in the Court's view, illegible. (Tr. at 1970). Further, Dr. Klufas provided two other medical source statements, one in December 2016, and one in August 2013. (Tr. at 1014, 1851). In the 2016 medical source statement, he assessed that Plaintiff could engage in fine finger manipulation 25% of the time. (Tr. at 1854). But in the 2013 medical source statement, he assessed that Plaintiff could only "occasionally" perform handling and fingering with both of his hands. (Tr. at 1016). He identified that Plaintiff's handling and fingering limitations were caused by "generalized weakness" and that Plaintiff has "alcoholic related neuropathy." *Id.*

Although it does not appear that Dr. Klufas explicitly opined that Plaintiff "could frequently handle and finger with the bilateral hands," in 2013 Dr. Klufas indicated that Plaintiff could occasionally perform handling and fingering with both hands, and that the only cause of any limitations to that capability was related to his alcohol use. *Id.* Thus, prior to Plaintiff's date last insured, but for symptoms related to his alcohol use, Plaintiff would have been able to "handle and finger with the bilateral hands" more than "occasionally," and therefore, at least "frequently," the next level on the medical source statement's assessment. *Id.*[18] Therefore, the Court finds that the ALJ's interpretation of Dr. Klufas's opinion regarding Plaintiff's hand use was not error and was based on a report that came before Plaintiff's date last insured. The ALJ's hand use restriction was supported by substantial evidence.

---

[18] Arguably, but for Plaintiff's alcohol abuse, Dr. Klufas would have assessed no limitation on fingering and handling.

*Mental and Social Limitations*

The ALJ's RFC determination limited Plaintiff to "work involving simple and detailed but not complex instructions and tasks; and was limited to brief and incidental contact with the general public." (Tr. at 2636). Plaintiff argues that these restrictions should have been greater in light of Plaintiff's mood swings and irritability, violent relationship with the mother of his children, impaired impulse control, slowed speech and motor functioning, and concentration issues. Pl.'s Mem. in Supp. at 33–34 (citing Tr. at 2635). The Commissioner contends that this argument is meritless because the ALJ addressed those issues in his opinion, and the limitation is supported by substantial evidence. The Court agrees with the Commissioner.

Accounting for Plaintiff's substance use, the ALJ determined that the severity of Plaintiff's mental impairments "do not meet or medically equal the criteria of listings 12.04 and 12.06 if the substance use was stopped." *Id.* Plaintiff does not challenge this finding and merely asserts that the RFC does not adequately account for these mental impairments.

Specifically, Plaintiff argues that the ALJ failed to adequately account for Plaintiff's "established pattern of poor judgment, impaired impulse control, slowed motor function and limited attention span." Pl.'s Mem. in Supp. at 34. The Court disagrees and again observes that while Plaintiff's assessment of the record evidence might have supported a different outcome, that is not the lens through which the Commissioner's decision is viewed. The ALJ acknowledged and considered Plaintiff's "lack of concentration, social anxiety, and irritability," (Tr. at 2641), when limiting him to simple and detailed but not complex instructions and tasks as well as limiting Plaintiff's exposure to and interactions with the public.

The question then, is whether these RFC restrictions were supported by substantial evidence. They clearly were. Plaintiff cites to no medical findings or opinions recommending

further mental restrictions. The record includes two psychiatric evaluations of Plaintiff, both of which were described in detail by the ALJ. (Tr. at 2639–40). The first, from January 2013, concluded that Plaintiff was "able to pay attention for short periods of time without being distracted," was "oriented to person, place, and time and could report on the events of that day quite easily," remembered events of his past, and had no issues with recall, verbal reasoning, or comprehension of abstract thought. (Tr. at 990). The Second, an examination by a Yale psychiatrist in June 2014, noted that his impulse control was "impaired," and that his mood was "sad and discouraged," but that he "probably has significant mood instability *related to his alcohol abuse*." (Tr. at 1714–15 (emphasis added)). The provider determined he needed symptomatic managements and that "no psych treatment is warranted at present." (Tr. at 1714). Further, as the Commissioner points out in his brief, there is significant support in the record that when Plaintiff was seen or screened by other providers, his mental status examination results were "generally normal." (*See, e.g.,* tr. at 88, 906, 908, 910, 914, 918, 951, 1089, 1402, 1561, 1652).

The ALJ therefore followed the proper procedures in determining Plaintiff's RFC with respect to his mental impairments, and his decision to impose the limitations therein was supported by substantial evidence.

*Off-Task Behavior*

Plaintiff's last argument is that the RFC did not sufficiently account for the time Plaintiff would have to spend off-task due to his various impairments. Plaintiff's argument is predicated on Dr. Klufas's medical source statements from December 29, 2016, (Tr. at 1851–55), and September 25, 2017 (Tr. at 1967–72). In the 2016 evaluation, Dr. Klufas opined that Plaintiff was capable of low-stress work, would be off-task 25 percent or more of the workday, would be absent more than 4 days per month, would need to walk for 5 minutes every 15 minutes, could sit for about 4 hours

and stand/walk for about 4 hours in an 8-hour work day, could sit for 15 minutes and stand for 15 minutes at one time, and would need to take unscheduled breaks of 5 to 10 minutes duration. (Tr. at 1851-55). In the 2017 evaluation, Dr. Klufas opined that Plaintiff was *incapable* of even low-stress work, would be off-task 25 percent or more of the workday, would be absent more than 4 days per month, would need to walk for 5 minutes every *60* minutes, could sit for about 4 hours but stand/walk for *about 2 hours* in an 8-hour work day, could sit for *45 minutes* and stand for *20 minutes* at one time, and would need to take unscheduled breaks of *5 minutes* duration. (Tr. at 1967–72).

Plaintiff merges the two opinions in his brief, and asserts that Dr. Kaplan, to whose opinion the ALJ afforded "great weight," agreed with Dr. Klufas, and testified that Plaintiff would need "some kind of sit/stand option," and also required a five-minute break every hour. Pl.'s Mem. in Supp. at 35 (citing Tr. at 213). The Commissioner argues that in citing the Transcript at 213 Plaintiff misconstrued Dr. Kaplan's statement regarding the "sit/stand" option, and avers that at that point in the January 20, 2018, hearing Dr. Kaplan was describing one of Dr. Klufas's opinions to the ALJ. Def.'s Mem. in Supp. at 11. It is not clear to the Court, based on the context in the transcript, whether Dr. Kaplan was referring to Dr. Klufas's opinion or his own. But it is also immaterial.

The ALJ made clear that he gave Dr. Kaplan's opinion regarding Plaintiff's ability to conduct sedentary work "great weight." (Tr. 2642). He also gave great weight to Dr. Klufas's opinion that Plaintiff would be limited to sedentary work without alcohol abuse, but little weight to his opinions "indicating that [Plaintiff] was limited to less than the full range of sedentary work." (Tr. at 2643; *see also* 10–12, *supra*). Here, in the face of conflicting evidence, the Court must defer to the Commissioner's resolution. *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012).

And as discussed on pages 10 to 13, *supra,* the ALJ decision to credit Dr. Kaplan's conclusion that Plaintiff was capable of sedentary work when not abusing alcohol was supported by substantial evidence.

Plaintiff cites the testimony of the vocational expert ("VE") at Plaintiff's January 21, 2023, hearing, in which the ALJ posed a hypothetical where "a person would be off task or needing unscheduled breaks for a total of 60 [to] 90 minutes per day over and above scheduled breaks." Pl.'s Mem. in Supp. at 34 (citing TR. at 2696). The VE answered that it would "preclude all employment." This hypothetical scenario aligns with Dr. Klufas's opinions of Plaintiff's off-task behaviors. It does not align, however, with Dr. Kaplan's assessment, on which the ALJ ultimately based his RFC determination. The hypothetical is therefore of no moment.

**Conclusion**

For the foregoing reasons, Plaintiff's Motion to Reverse (ECF No. 14) is DENIED and the Commissioner's Motion to Affirm (ECF No. 15) is GRANTED. The Clerk of the Court is directed to enter judgment in favor of the Commissioner and close the file.

**SO ORDERED** at Bridgeport, Connecticut, this 31st day of March 2025.

                                            */s/ Kari A. Dooley*
                                            KARI A. DOOLEY
                                            UNITED STATES DISTRICT JUDGE